UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

JOHN P. PATTERSON,

               Plaintiff,              **DECISION AND ORDER**

       v.                           1:16-CV-00844 EAW

JOEL M. PATTERSON, Sergeant, Five Points
Correctional Facility, SHARI L. KAMPNICH,
Correctional Officer, Five Points Correctional,
WILLIAM S. PALMER, Correctional Officer
Five Points Correctional Facility, MATTHEW
R. PIOTROWSKI, Correctional Officer, Five
Points Correctional Facility, JOANNE L.
SPRINGER, Facility Nurse, Five Points
Correctional Facility, and GRAIGE GOODMAN,
Captain at Great Meadow Correctional Facility,

               Defendants.

───────────────────────────────

## INTRODUCTION

Plaintiff John P. Patterson ("Plaintiff") is currently incarcerated at the Great Meadow Correctional Facility ("Great Meadow C.F.") under the custody and control of the New York State Department of Corrections and Community Supervision ("DOCCS"). He filed this *pro se* action under 42 U.S.C. § 1983 pertaining to events that occurred at the Five Points Correctional Facility ("Five Points C.F.") and Great Meadow C.F. (Dkt. 1). He also has moved for leave to proceed *in forma pauperis* (Dkt. 2), for the appointment of counsel (Dkt. 3) and to be provided a copy of the complaint and attached exhibits (Dkt. 7; Dkt. 10).

- 1 -

For the following reasons, Plaintiff's motion to proceed *in forma pauperis* is granted, Plaintiff's motion for the appointment of counsel is denied without prejudice, and Plaintiff's motions to be provided a copy of the complaint are granted.

Additionally, the Court has reviewed Plaintiff's complaint as required by 28 U.S.C. §§ 1915 and 1915A. Plaintiff's claims alleging a violation of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. §§ 15601 *et seq.*, a false Misbehavior Report, and a due process violation must be dismissed. Plaintiff will be provided leave to file an amended complaint curing the defects with his false Misbehavior Report claim, as described below.

## FACTUAL BACKGROUND[1]

Plaintiff alleges that in the early morning hours of November 23, 2013, after he had returned to Five Points C.F. from the Cayuga Medical Center—where he had been sent for an examination because he had swallowed part of his eyeglasses following an incident where a correctional officer had falsely accused him of pulling down his pants—he was placed in an isolation room and physically and sexually assaulted by Defendants Sergeant Joel M. Patterson ("Patterson"), and Correctional Officers Shari L. Kampnich ("Kampnich"), William S. Palmer ("Palmer") and Matthew R. Piotrowski ("Piotrowski"). (Dkt. 1 at ¶¶ 25-40).

According to the complaint, as Plaintiff was led into the isolation room, he was violently pushed from behind by Patterson and tripped by Kampnich. (*Id.* at ¶ 25). At the time, he was in handcuffs, a waist chain, and leg shackles. (*Id.* at ¶ 26). After

---

[1] The facts detailed here are those alleged in the complaint.

Plaintiff fell to the floor, he was repeatedly kicked and punched in the face, head, back, ribs, and legs by Patterson, Piotrowski, Kampnich, and Palmer. (*Id.* at ¶ 27-30). Plaintiff also claims that Palmer held him down by placing a knee on his face and that Kampnich said "[s]o you like showing your [penis]." (*Id.* at ¶ 36). Then Plaintiff's underwear was pulled down and one of the four Defendants placed a finger or some other small object into Plaintiff's anus several times. (*Id.*).

Plaintiff alleges that following the assault, he was examined by Nurse Joanne L. Springer ("Springer") and she simply "looked [him] up & down" and stated that Plaintiff "look[ed] fine." (*Id.* at ¶¶ 41-42). As Springer began to walk out of the exam room, Plaintiff advised Springer that he had just been sexually and physically assaulted and that his "back, head, and ribs hurt," and that one of his molars had been knocked out of his mouth. (*Id.* at ¶ 43). Springer allegedly ignored him, stated "yeah, yeah," and walked out. (*Id.*). Springer returned a few minutes later to look at his face, which had some dried blood on it, and gave Plaintiff a wet paper towel to wipe his face. (*Id.* at ¶ 44). Plaintiff asked Springer if she had reported his sexual assault complaint as required under PREA, but she ignored him. (*Id.* at ¶ 45).

Later that morning, Plaintiff returned to the Cayuga Medical Center for an endoscopy to remove the part of the eyeglasses he had swallowed the previous evening. (*Id.* at ¶ 46). Plaintiff advised the medical professionals at Cayuga Medical Center about what had occurred at Five Points C.F. (*id.*), and they told him that his allegations had been reported to the New York State Police and the Inspector General's Office (*id.* at ¶ 47). Plaintiff underwent a "sexual assault nurse exam." (*Id.* at ¶ 49). Following the

endoscopy, Plaintiff returned to Five Points C.F. and was placed on suicide watch and a camera order, where he remained until December 20, 2013, at which time he was transferred to the Central New York Psychiatric Center ("CNYPC") for three months. (*Id.* at ¶¶ 51-52). Following his requested release from CNYPC, he was transferred to Great Meadow C.F. in February 2014. (*Id.* at ¶ 52).

Upon Plaintiff's transfer to Great Meadow C.F., Plaintiff filed a grievance on February 20, 2014, related to the November 23, 2013, incident. (*Id.* at ¶¶ 52-53). He claims this was the first opportunity he had to file such a grievance. (*Id.* at ¶ 52). The grievance was denied as untimely. (*Id.* at ¶ 54; *see, e.g.*, Dkt. 1-8 at 2). Plaintiff followed up with DOCCS's Inmate Grievance Program Director, Karen Bellamy, who advised Plaintiff that his allegations were being investigated by the Inspector General's Office. (Dkt. 1-11 at 4).

Shortly after arriving at Great Meadow C.F., Plaintiff was served with a misbehavior report regarding the incident at Five Points C.F., which charged him with a number of inmate rules violations, including assault on staff and violent conduct. (Dkt. 1 at ¶ 65). Plaintiff claims that this report, along with other reports filed by Palmer, Patterson, Kampnich, and Piotrowski—a Use of Force report and an Unusual Incident report—were falsified in order to cover up Defendants' conduct. (*Id.* at ¶ 64).

Defendant Captain Graige Goodman ("Goodman") was designated to conduct the Tier III Superintendent's hearing into the Misbehavior Report. (*Id.* at ¶ 61). The hearing commenced sometime in March 2014, and Plaintiff claims that Kampnich's testimony at the hearing was inconsistent with the various reports filed in relation to the incident and,

when he tried to question her about the inconsistencies, Goodman interfered with Plaintiff's questioning and, at some point, refused to allow any additional questions. (*Id.* at ¶¶ 66-74). At that point, Goodman stated that there would be no further questioning of Kampnich and he hung up the telephone, thereby ending the testimony. (*Id.* at ¶¶ 75-76). Plaintiff then accused Goodman of covering up the November 23, 2013, incident, at which time Goodman adjourned the hearing and stated he (Goodman) would call additional witnesses the following day. (*Id.* at ¶¶ 77-78).

Two weeks passed without further proceedings. (*Id.* at ¶ 79). Plaintiff thereafter asked Goodman about the status of the hearing. (*Id.* at ¶ 80). Goodman advised Plaintiff that the Misbehavior Report was going to be dismissed due to inconsistencies between Kampnich's testimony and the written report of the incident. (*Id.* at ¶ 81). Upon request, Goodman said he would provide Plaintiff with a copy of the hearing disposition and the hearing tape number. (*Id.* at ¶ 82). Plaintiff never received either. (*Id.* at ¶ 83). Plaintiff does not include any allegation that he was subjected to discipline on account of the Misbehavior Report.

On March 27, 2016, while incarcerated at Attica Correctional Facility ("Attica C.F."), Plaintiff filed a request under New York's Freedom of Information Law ("FOIL") asking for the hearing disposition and tape, along with the Misbehavior Report, the Use of Force Report, and the Unusual Incident Report. (*Id.* at ¶ 85). Plaintiff filed a grievance on April 14, 2016, complaining that Attica C.F.'s FOIL office failed to respond to his request. (*Id.* at ¶ 86). Plaintiff received a response to the grievance only and was told that Attica C.F.'s FOIL Officer had reported that there were no documents

responsive to Plaintiff's request. (*Id.* at ¶ 87; *see, e.g.*, Dkt. 1-15 at 4). Plaintiff claims that this response establishes that the hearing information has "vanished," presumably in an attempt to cover up the incident of November 23, 2013. (Dkt. 1 at ¶ 90).

## DISCUSSION

### I. Plaintiff's Motion for Leave to File *In Forma Pauperis*

Plaintiff's affirmation of poverty has been reviewed in accordance with 28 U.S.C. § 1915(a)(1). Plaintiff has met the statutory requirements for *in forma pauperis* status, and therefore, permission to proceed *in forma pauperis* is granted.

### II. Plaintiff's Complaint

#### A. Standard of Review

Sections 1915(e)(2)(B) and 1915A(b) of Title 28 of the United States Code require the Court to conduct an initial screening of this complaint. The Court must dismiss the complaint or any portion of the complaint that is "frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(b); *see, e.g.*, 28 U.S.C. § 1915A(b) (requiring the court to dismiss any claim which "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief"). "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact." *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999).

In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations, and must draw all inferences in the plaintiff's favor. *See, e.g.*, *Larkin v.*

*Savage*, 318 F.3d 138, 139 (2d Cir. 2003). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

"[A] district court should look with a far more forgiving eye in examining whether a complaint rests on a meritless legal theory for purposes of section [§ 1915(e)] than it does in testing the complaint against a Rule 12(b)(6) motion." *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990). In determining whether a complaint survives a Rule 8 notice inquiry, the plaintiff need "only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "So long as the [*in forma pauperis*] plaintiff raises a cognizable claim, dismissal on the basis of factual deficiencies in the complaint must wait until the defendant attacks the lack of such details on a Rule 12(b)(6) motion." *Nance*, 912 F.2d at 607.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

## B. Plaintiff's Claims

### 1. Excessive Force

Plaintiff first claims that Patterson, Kampnich, Palmer, and Piotrowski used excessive force, violating Plaintiff's Eighth Amendment rights. In order to establish a claim for excessive use of force, Plaintiff must satisfy both an objective and subjective test. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To fulfill the objective prong, a plaintiff must show that the force applied was "sufficiently serious" or harmful to establish a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "This objective component is contextual and responsive to contemporary standards of decency." *Sloane v. Borawski*, 64 F. Supp. 3d 473, 490 (W.D.N.Y. 2014) (internal quotation marks and citation omitted). Although a plaintiff "need not prove 'significant injury' to make out an excessive force claim, . . . *de minimis* uses of force generally do not suffice to state a constitutional claim. . . ." *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999). "[T]he core judicial inquiry is not the extent of the injury sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sloane*, 64 F. Supp. 3d at 490 (internal quotation marks and citation omitted).

To establish the subjective component, the inmate must show the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994). In this regard, courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts

made to temper the severity of a forceful response.'" *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citation omitted).

Here, Plaintiff has adequately alleged excessive use of force claims against Patterson, Kampnich, Palmer, and Piotrowski. Plaintiff alleges significant force and significant injury, satisfying the objective component. Similarly, Plaintiff's allegations satisfy the subjective component. Thus, Plaintiff's excessive force claim is sufficient at this stage of the litigation.

### 2. **Deliberate Indifference**

Plaintiff next claims that Springer was deliberately indifferent to Plaintiff's medical needs following the alleged beating and sexual assault, in violation of Plaintiff's Eighth Amendment rights. An Eighth Amendment claim arising out of inadequate medical care requires a plaintiff-inmate to demonstrate that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer*, 511 U.S. at 834. A claim for deliberate indifference also has both an objective and a subjective component. *Wilson*, 501 U.S. at 298-99.

Objectively, a medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. Cty. of Nassau*, 459 F. App'x 28, 29 (2d Cir. 2012) (quoting *Hathaway*, 99 F.3d at 553). Specifically, a plaintiff must prove that the prison official

knew of a serious medical condition and nonetheless disregarded the plaintiff's medical needs. *Farmer*, 511 U.S. at 837 (holding that a prison official does not act in a deliberately indifferent manner toward an inmate unless he "knows of and disregards an excessive risk to inmate health or safety"); *see also Beaman v. Unger*, 838 F. Supp. 2d 108, 110 (W.D.N.Y. 2011) ("To establish deliberate indifference, . . . [a] plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.").

Plaintiff asserts that Springer knew of his alleged assault and significant injuries, including a broken tooth, but that she failed to take any action at all beyond providing Plaintiff a wet paper towel. Plaintiff's allegations are sufficient, at this stage, to establish a claim against Springer for deliberate indifference.

### 3. PREA

Read liberally, the complaint seeks to raise a claim under the PREA. There is no private right of action under PREA, and therefore, Plaintiff's claim must be dismissed. "'[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.'" *McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) (quoting *Amaker v. Fischer*, No. 10–CV–0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014)). To the extent Plaintiff's complaint is based on alleged violations of PREA by failing to properly report allegations of sexual assault and perform a proper medical examination after such a report, it must be

dismissed as failing to state a claim. Because no amendment could cure this defect, the claim must be dismissed with prejudice.

### 4. False Misbehavior Report

Plaintiff further alleges that Patterson, Kampnich, Palmer, and Piotrowski submitted a false misbehavior report related to the November 23, 2013, incident in order to cover up their conduct. "In general, a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (quoting *Freeman v. Rideout*, 808 F.2d 949, 951 (1986)). However, such a claim is cognizable under § 1983 "when an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" *Id.* (citation omitted). To establish a claim for retaliation for exercising a constitutionally protected right, a plaintiff must show that "he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003).

Even taking as true Plaintiff's allegations that the Misbehavior Report was deliberately falsified as part of a conspiracy to cover up his alleged beating and sexual assault, Plaintiff has not sufficiently stated a claim. Plaintiff does not allege that he was ever disciplined because of the Misbehavior Report.

In addition, Plaintiff filed a grievance as to the alleged conduct, which is a constitutionally protected activity. *See Bennett*, 343 F.3d at 137; *see, e.g., Faulk v.*

*Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) ("[F]iling an inmate grievance constitutes protected conduct. . . ."). However, he does not allege that his filing of the grievance was the substantial or motivating factor behind the Misbehavior report.

Thus, Plaintiff's claim regarding the allegedly false Misbehavior Report must be dismissed, but the dismissal is without prejudice. Plaintiff will be afforded leave to file an amended complaint to attempt to cure the defects in this claim.

### 5. Conspiracy

Plaintiff also contends that Patterson, Kampnich, Palmer, and Piotrowski engaged in a conspiracy to cover up their actions. To maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Conclusory statements that a conspiracy is afoot are insufficient. *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012). Here, Plaintiff's allegations are sufficiently concrete such that they state a claim and dismissal would be inappropriate at this time.

### 6. Due Process

Finally, Plaintiff claims that his due process rights were violated during the Tier III hearing. "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra*, 123 F. Supp. 3d 419, 422 (W.D.N.Y. 2015). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"

*Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Where a prisoner alleges that he was confined to the Special Housing Unit ("SHU") as the result of a disciplinary hearing, the court considers how long the confinement lasted, along with "the conditions of the prisoner's segregated confinement relative to the conditions of the general prison population," in determining whether a liberty interest is implicated. *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 259 (N.D.N.Y. 1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted).

There is no "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). However, the Second Circuit has held that confinement for fewer than 101 days under "normal" SHU conditions does not amount to an atypical and significant hardship and thus does not implicate a liberty interest under the Due Process Clause. *Ortiz*, 380 F.3d at 654-55; *see also Tafari v. McCarthy*, 714 F. Supp. 2d 317, 375 (N.D.N.Y. 2010) (stating that SHU confinements of up to 90 days "fall within the 'short range' of disciplinary confinement and thus implicate a liberty interest only if 'the conditions were more severe than the normal SHU conditions.'" (quoting *Palmer*, 364 F.3d at 65)).

Here, there are no allegations that Plaintiff was subjected to disciplinary confinement of any kind or duration as a result of the alleged procedural infirmities in the

Tier III hearing. Plaintiff does not allege any discipline as a result of the hearing, but, instead, states that the underlying Misbehavior Report was dismissed because testimony during the hearing was inconsistent with the Report. (*See* Dkt. 1 at ¶ 107; *see, e.g., id.* at ¶ 83). Accordingly, Plaintiff cannot state a claim that he was denied due process and, therefore, the claims alleging a denial of due process must be dismissed with prejudice. Because Goodman is named as a Defendant only in reference to Plaintiff's due process claim, he must be terminated as a party to this action.

### III. Plaintiff's Motion for the Appointment of Counsel

Plaintiff has moved for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). (Dkt. 3). He notes that he has serious mental health issues and cannot afford counsel. (*Id.* at ¶¶ 1-2).

Under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))). Additionally, for prison

inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

Plaintiff was in prison when he filed the complaint, and remains in custody. As noted above, Plaintiff will proceed *in forma pauperis*. In his *in forma pauperis* motion, Plaintiff stated that he was incarcerated, had not worked in the past 12 months, and did not have any cash or other assets. (Dkt. 2 at 1-2). A prison official certified that Plaintiff's average account balance for the previous six months was $45.56. (*Id.* at 2). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel.

However, on balance, the *Cooper* factors weigh against appointing counsel at this time. As the Second Circuit has noted, "[t]he vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings." *Cooper*, 877 F.2d at 173. Plaintiff states that his efforts have been "fruitless" in trying to obtain an attorney, even on a contingency basis. (Dkt. 3 at ¶ 5). Plaintiff attaches to his motion five letters from attorneys, each declining to take Plaintiff's case. (*Id.* at 18-22). The Court finds that Plaintiff has made attempts to find counsel. However this, in itself, is insufficient to warrant the appointment of counsel.

Plaintiff has not shown anything more than a remote possibility of success on the merits. Plaintiff's ultimate success on the merits faces significant hurdles. Indeed, no Defendant has yet appeared in this case. This weighs heavily against the appointment of counsel.

The Court is sensitive to Plaintiff's mental health issues but notes that the complaint, while lengthy, is factually detailed and contains a number of relevant and well-organized exhibits supporting Plaintiff's claims. This too weighs against the appointment of counsel.

Balancing the factors set forth in *Cooper*, the Court finds that appointing counsel is inappropriate at this time, and, therefore, Plaintiff's motion is denied without prejudice.

IV.  **Plaintiff's Motions for a Copy of the Complaint**

Plaintiff has requested that the Court provide him a copy of his complaint because DOCCS lost or misplaced his complaint and exhibits. (Dkt. 7; Dkt. 10). He also states that he cannot pay the costs of printing or copying the documents. (Dkt. 7 at 2; Dkt. 10 at 1). *In forma pauperis* status does not cover the costs of the printing or copying of documents filed with the court. *See Benitez v. Mailloux*, No. 9:05-CV-1160 (NAM)(RFT), 2008 WL 4757361, at *4 (N.D.N.Y. Oct. 29, 2008). However, the Court also has no reason to question Plaintiff's claim that his documents in this matter have been lost or misplaced. Without access to copies of his complaint and exhibits, Plaintiff would undoubtedly have difficulty in prosecuting this matter. The Court finds, in the interest of justice, that Plaintiff should be provided—in this one instance—a copy of his complaint and attached exhibits without payment therefore. Plaintiff should be aware that the Court is making an exception to its normal procedures, *see* L.R. Civ. P. 5.4, and the grant of Plaintiff's instant request does not mean that further requests will be treated similarly.

The Clerk of Court is directed to provide to Plaintiff a copy of the complaint and attached exhibits.

V. <u>Plaintiff's Second Amended Complaint</u>

As noted above, Plaintiff will be afforded leave to file an amended complaint. **Plaintiff must file the amended complaint by <u>May 14, 2017</u>, otherwise the false Misbehavior Report claim will be dismissed and the original complaint will proceed to service.** Plaintiff's amended complaint must include the necessary allegations, as directed above, in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff is reminded that the false Misbehavior Report claim, as it is written in his original complaint, fails to include any allegation that the Misbehavior Report was filed in retaliation for Plaintiff's filing of a grievance, and not for another purpose. As alleged, Plaintiff fails to state a claim as to the Misbehavior Report.

Plaintiff is advised that the amended complaint is intended to **<u>completely replace</u>** his original complaint. *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect."). Plaintiff's amended complaint must include all of the allegations against Defendants, **<u>including those claims not dismissed by this Decision and Order</u>**, so that the amended complaint may stand alone as the sole complaint in this action.

## ORDER

For the foregoing reasons, the Court

GRANTS Plaintiff's motion to proceed *in forma pauperis* (Dkt. 2);

DENIES Plaintiff's motion to appoint counsel (Dkt. 3) without prejudice;

GRANTS Plaintiff's motions to provide him with a free copy of his complaint and the attached exhibits (Dkt. 7; Dkt. 10);

DIRECTS the Clerk of Court to send Plaintiff a copy of his complaint and the attached exhibits;

DISMISSES Plaintiff's PREA and due process claims with prejudice;

DISMISSES Plaintiff's false Misbehavior Report claim without prejudice;

GRANTS Plaintiff leave to file an amended complaint **by May 14, 2017** curing the defects regarding his false Misbehavior Report claim;

DIRECTS the Clerk of Court to terminate Defendant Graige Goodman as a party to this action;

DIRECTS the Clerk of Court to file Plaintiff's papers, and to cause the United States Marshals Service to serve copies of the summons, complaint, and this Order upon Defendants Patterson, Kampnich, Palmer, Piotrowski, and Springer without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor, if Plaintiff fails to file an amended complaint **by May 14, 2017**, without further order of the Court;[2]

DIRECTS the Clerk of Court to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office

---

[2] Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.

<Michael.Russo@ag.ny.gov>, if Plaintiff fails to file an amended complaint, without further order of this Court; and

DIRECTS Defendants, pursuant to 42 U.S.C. § 1997e(g)(2), to respond to the original complaint if Plaintiff fails to file an amended complaint within the time prescribed.

SO ORDERED.

s/ Elizabeth A. Wolford<br>
ELIZABETH A. WOLFORD<br>
United States District Judge

Dated: April 14, 2017
      Rochester, New York