UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
MAR 2 0 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

JOHN P. PATTERSON,

        Plaintiff,

v.

JOEL M. PATTERSON, Sergeant, Five
Points Correctional Facility, SHARI L.
KAMPNICH, Correctional Officer, Five
Points Correctional, WILLIAM S.
PALMER, Correctional Officer, Five
Points Correctional Facility, MATTHEW
R. PIOTROWSKI, Correctional Officer,
Five Points Correctional Facility, and
JOANNE L. SPRINGER, Facility Nurse,
Five Points Correctional Facility,

        Defendants.

**DECISION AND ORDER**

1:16-CV-00844 EAW

## **INTRODUCTION**

Plaintiff John P. Patterson ("Plaintiff"), proceeding *pro se*, is an inmate currently

housed at the Marcy Correctional Facility ("Marcy"). Plaintiff brings the instant action

pursuant to 42 U.S.C. § 1983 and New York Penal Law Article 130, alleging that

defendants Joel M. Patterson ("Sergeant Patterson"), Shari L. Kampnich ("Kampnich"),

William S. Palmer ("Palmer"), Matthew R. Piotrowski ("Piotrowski"), and Joanne L.

Springer ("Nurse Springer") (collectively "Defendants") committed various violations of

Plaintiff's state and constitutional rights arising from an alleged assault that occurred while

he was housed at the Five Points Correctional Facility ("Five Points"). (Dkt. 12).

Presently before the Court is Plaintiff's motion for a preliminary injunction (Dkt. 21), and Defendants' partial motion to dismiss (Dkt. 22). For the reasons that follow, Plaintiff's motion for a preliminary injunction is denied, and Defendants' partial motion to dismiss is granted.

## BACKGROUND

I. **Factual History**

The following facts are taken from Plaintiff's Amended Complaint (Dkt. 12), the operative complaint in the instant action. As is required at this stage of the proceedings, the Court has treated Plaintiff's allegations as true.

On November 22, 2013, Plaintiff was housed at Five Points, one of three maximum security prisons in the state of New York that has a residential mental health unit ("RMHU"). (*Id.* at ¶¶ 12-13). He was in his RMHU cell when a nurse made her evening rounds with Officer Kimball to administer medication. (*Id.* at ¶ 13). Officer Kimball asked Plaintiff why he had his pants down when Plaintiff's pants were not actually down. (*Id.*). The nurse said that Plaintiff's pants were not down, and Plaintiff got into an argument with Officer Kimball. (*Id.* at ¶ 14). Officer Kimball then threatened to take Plaintiff across to the infirmary, an area with no cameras, so that he could beat Plaintiff up. (*Id.*). In response, Plaintiff became suicidal and swallowed the arms of his glasses. (*Id.* at ¶ 15).

At approximately 7:00 p.m., Plaintiff was transported to the Cayuga Medical Center in Ithaca, New York by Piotrowski and Kampnich so he could get an endoscopy to remove the glasses arms from his stomach. (*Id.* at ¶ 16). The procedure could not be performed at that time, and Plaintiff returned to Five Points, arriving at approximately 12:30 a.m. (*Id.*

- 2 -

at ¶¶ 17-18). Piotrowski escorted Plaintiff to the infirmary while Kampnich returned the transport vehicle. (*Id.* at ¶ 19). Palmer was at the infirmary's desk when Plaintiff checked in, and Plaintiff was placed in the infirmary holding pen. (*Id.*). Sergeant Patterson and Kampnich joined Piotrowski and Palmer at the infirmary desk, and Kampnich referred to Plaintiff as "the Penis Flasher." (*Id.* at ¶ 20). Nurse Springer entered the infirmary and took Plaintiff's vital signs. (*Id.* at ¶ 21). Sergeant Patterson informed Plaintiff that until the objects he swallowed were removed, he would have to spend the night in a dry cell.[1] (*Id.* at ¶ 22).

Palmer opened up the door to the dry cell, and Plaintiff was told to step inside. (*Id.* at ¶ 23). Plaintiff had on handcuffs, a waist chain, and leg restraints. (*Id.*). As Plaintiff stepped in, Sergeant Patterson pushed him from behind, and Kampnich tripped him. (*Id.*). Unable to catch himself because of his restraints, Plaintiff fell to the ground and struck his face. (*Id.* at ¶ 24). Palmer then kicked the left side of Plaintiff's face, fracturing Plaintiff's upper left molar.[2] (*Id.* at ¶ 25). Sergeant Patterson told Palmer "not the face" because Plaintiff had to return to the medical center in the morning. (*Id.* at ¶ 26). Then Sergeant Patterson, Palmer, Piotrowski, and Kampnich kicked and punched Plaintiff in the head, back, ribs, and legs, causing bruises and contusions on his legs, exacerbating a low-back injury, and busting his lip. (*Id.* at ¶¶ 27-28). Piotrowski grabbed Plaintiff by his shirt collar, causing him to pass out momentarily. (*Id.* at ¶ 29).

---

[1]     A dry cell is a cell with no sink or toilet; only a bedframe and mattress. (Dkt. 12 at ¶ 22).

[2]     The tooth was so severely damaged that it later had to be removed. (Dkt. 12 at ¶ 25).

When Plaintiff came to, the corrections officers were forcing him to stand with his face shoved in the corner of the cell, getting blood from his lip onto the wall. (*Id.* at ¶ 30). Plaintiff was then ordered to kneel on the bed so his leg restraints could be removed, and afterwards he was told to stand. (*Id.* at ¶¶ 31-32). Kampnich and Palmer held Plaintiff on either side by his shirt, and one of them lifted his collar. (*Id.* at ¶ 33). Plaintiff jumped back, and he was punched on his head, back, and ribs before being thrown to the ground on his stomach with his pants around his thighs. (*Id.* at ¶¶ 33-34). Palmer held his upper body down, one or two of the other correctional officers held down his legs, and Kampnich said, "So you like showing your dick!" (*Id.* at ¶ 35). Plaintiff's underwear was pulled down further and either Sergeant Patterson, Kampnich, or Piotrowski pulled on Plaintiff's penis and then penetrated his anus with a small object. (*Id.*). Plaintiff tried to yell out, but Palmer covered his mouth to keep him from screaming. (*Id.*). One of the corrections officers choked Plaintiff by his shirt collar, causing him to pass out again. (*Id.* at ¶ 36).

When Plaintiff regained consciousness, Defendants were gone. (*Id.* at ¶ 37). Sergeant Brinkeroff banged on his door, and Plaintiff told him he needed to report a sexual assault and be looked at by Nurse Springer. (*Id.* at ¶ 38). Sergeant Brinkeroff said Nurse Springer would be there shortly. (*Id.*).

At approximately 12:45 a.m., Plaintiff was seen by Nurse Springer. He was stripped down to his boxers, and Nurse Springer looked him up and down and began to leave. (*Id.* at ¶ 40). Plaintiff told her he had been sexually assaulted and listed his injuries, but Nurse Springer just said "yeah, yeah," before walking out of the room. (*Id.*). She came back two minutes later and gave Plaintiff a wet paper towel to wipe the blood off his face with and

ignored Plaintiff when he asked if she had reported the sexual assault. (*Id.* at ¶ 42). In the medical report about the appointment, Nurse Springer stated that Plaintiff had no visible injuries. (*Id.* at ¶ 48).

At 8:00 a.m. on November 23, 2013, Plaintiff returned to the Cayuga Medical Center for the endoscopy. (*Id.* at ¶ 43). He told the first nurse he saw that he had been sexually and physically assaulted at Five Points. (*Id.* at ¶ 44). His doctor notified the New York State Police and the Inspector General's Office about his claims, and while Plaintiff was waiting for his medical procedure, an Inspector General officer came to speak with him. (*Id.* at ¶¶ 46-47). At approximately 10:00 a.m., Plaintiff was given a sexual assault nurse exam ("S.A.N.E. exam"), where the nurse reported the following injuries: (1) three small rectal tears and a small amount of bleeding; (2) an abrasion on his lower lip; (3) a fracture on his left upper molar tooth; (4) a tender, red mid-back; (5) an abrasion on his right shin; and (6) a small abrasion on his lower leg. (*Id.* at ¶¶ 48-49). Plaintiff had the endoscopy to have the glasses arms removed from his stomach, and he returned to Five Points around 1:30 p.m. (*Id.* at ¶ 50).

From November 22 to December 20, 2013, Plaintiff was held at Five Points under suicide watch and with a camera order. (*Id.* at ¶ 51). On December 20, 2013, he was sent to the Central New York Psychiatric Center where he stayed for three months, and then he was placed in the mental health behavioral unit at the Great Meadow Correctional Facility ("Great Meadow"). (*Id.*).

On February 20, 2014, Plaintiff filed a grievance regarding the November 23, 2013, incident. Around February or March 2014, after Plaintiff filed his grievance, Plaintiff was

served with a misbehavior report alleging that he had assaulted Five Points staff. (*Id.* at ¶ 59). The report stated that Plaintiff initiated the altercation and included the medical report where Nurse Springer stated Plaintiff had no visible injuries. (*Id.* at ¶ 62). A disciplinary hearing was conducted, and the charges against Plaintiff were dismissed due to Kampnich's conflicting testimony. (*Id.* at ¶ 67). Plaintiff requested the hearing disposition and tape number, which he never received. (*Id.*). On March 27, 2016, Plaintiff submitted a request pursuant to New York's Freedom of Information Law ("FOIL request") for the papers related to the incident as well as the hearing disposition and tape number. (*Id.* at ¶ 69). On April 27, 2016, Plaintiff received a response that said there were "no such documents to give" to Plaintiff. (*Id.* at ¶ 71). Plaintiff contacted the Prisoners Legal Service of New York ("PLS"), and a PLS attorney called Great Meadow about the hearing and was told it was still pending. (*Id.* at ¶ 74).

Sometime between 2013 and 2016, Plaintiff was transferred to Attica Correctional Facility, and on November 28, 2016, he was transferred to Marcy. (Dkt. 6). On February 9, 2017, he was transferred to Great Meadow (Dkt. 9), and then back to Attica on July 19, 2017 (Dkt. 14). Sometime in 2018, Plaintiff was transferred to Five Points (Dkt. 21), and on October 29, 2018, he was transferred to the Central New York Psychiatric Center. (Dkt. 26). As of December 19, 2018, Plaintiff resides at Marcy. (Dkt. 28).

## II.    **Procedural History**

Plaintiff filed the instant lawsuit on October 21, 2016. (Dkt. 1). On April 14, 2017, he was granted leave to proceed *in forma pauperis*, and the Court allowed his § 1983 claims for excessive use of force, deliberate indifference, and conspiracy to proceed. (Dkt. 11).

Plaintiff was also given the opportunity to amend his complaint so as to properly assert a retaliation claim based on his allegations that Defendants filed a false misbehavior report. (*Id.* at 12). On May 8, 2017, Plaintiff filed an Amended Complaint re-alleging the false misbehavior report claim, and also asserting claims for equal protection against Nurse Springer, retaliation against Nurse Springer, and violations of New York Penal Law. (Dkt. 12). On April 18, 2018, the Court dismissed Plaintiff's false misbehavior report claim and directed service of the Amended Complaint, original complaint, and the April 14, 2017, and April 18, 2018, Orders on Sergeant Patterson, Kampnich, Palmer, Piotrowski, and Nurse Springer. (Dkt. 18).[3]

On June 22, 2018, Plaintiff moved for a preliminary injunction. (Dkt. 21). On July 19, 2018, Defendants filed a partial motion to dismiss Plaintiff's claims for equal protection, violations of New York Penal Law, retaliation, conspiracy, injunctive relief, and against them in their official capacities. (Dkt. 22). No responses were filed to either motion. Palmer passed away on September 9, 2018.[4] (Dkt. 25).

---

[3]    To the extent the Court's April 18, 2018, Order references Plaintiff's deliberate indifference claim as being dismissed (Dkt. 18 at 2), any such statement was in error. Only the false misbehavior report claim was dismissed, as stated in the decretal section of the Order. (*Id.* at 4). Plaintiff's deliberate indifference claim has not been dismissed and may proceed to discovery.

[4]    An order will issue under separate cover addressing the procedural implications raised by Defendants' filing of the suggestion of death of Palmer.

## DISCUSSION

### I.    Motion for Preliminary Injunction

After Plaintiff was transferred to Five Points sometime in 2018, he filed a motion for a preliminary injunction, asking to be moved from Five Points to a different correctional facility. (Dkt. 21 at 5). Plaintiff was moved from Five Points to the Central New York Psychiatric Center on October 29, 2018 (Dkt. 26), and then to Marcy on December 19, 2018 (Dkt. 28). As Plaintiff is no longer housed at Five Points, Plaintiff's motion is denied as moot. *See, e.g., McPherson v. Coombe*, 992 F. Supp. 229, 232 (W.D.N.Y. 1997) (holding the transfer of the inmate to a different correctional facility rendered his preliminary injunction motion moot).

### II.    Motion to Dismiss

####    A.    Legal Standards

#####       1.    12(b)(1) Motion to Dismiss

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that the court retains jurisdiction." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "[T]he district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). "Indeed, a challenge to the jurisdictional elements of a

plaintiff's claim allows the Court to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003), *aff'd*, 249 F. App'x 851 (2d Cir. 2007). "The court may consider affidavits and other materials beyond the pleadings but cannot rely on conclusory or hearsay statements contained in the affidavits." *Young v. United States*, No. 12-CV-2342 ARR SG, 2014 WL 1153911, at *6 (E.D.N.Y. Mar. 20, 2014) (quotation omitted).

### 2. 12(b)(6) Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### B.     Official Capacity Claims and Request for Injunctive Relief

Plaintiff alleges claims against Defendants in their official capacities and requests injunctive relief that he not be housed at Five Points at any time in the future. (Dkt. 12 at 44). Defendants seek to dismiss Plaintiff's request for injunctive relief and his claims against them in their official capacities. (Dkt. 22-1 at 6-7, 18-21).

Under the Eleventh Amendment, states and their agencies are immune from suits brought by private parties in federal court, unless Congress "unequivocally expresses its intent" to abrogate that immunity and "acts pursuant to a valid exercise of power," or a state waives its immunity. *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (quotations and citation omitted). This jurisdictional bar applies "whether the relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276 (1986). The protections of the Eleventh Amendment extend to state officials acting in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009); *K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health*, 189 F.3d 273,

278 (2d Cir. 1999). "This is so because . . . a judgment against a public servant in his official capacity imposes liability on the entity that he represents[.]" *Graham*, 473 U.S. at 169 (quotations and citation omitted).

However, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). When determining whether a claim "avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

"Neither the Supreme Court nor the Second Circuit has directly addressed whether a violation that is not currently in progress may nevertheless be considered 'ongoing' where the possibility of a future violation exists." *Babyrev v. Lanotte*, No. 16 Civ. 5421 (ER), 2018 WL 388850, at *4 (S.D.N.Y. Jan. 11, 2018). However, the other circuits that have examined this issue "have held that the challenged action need not literally 'be in progress' to defeat a claim of sovereign immunity; rather, 'where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied.'" *Doe v. Annucci*, No. 14 Civ. 2953(PAE), 2015 WL 4393012, at *16 (S.D.N.Y. July 15, 2015) (quoting *Summit Med. Assocs., P.C. v. Pryor*,

180 F.3d 1326, 1338 (11th Cir. 1999)); *see Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) ("The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent."); *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir. 1996) ("[T]he *Young* exception permits relief against state officials only when there is an ongoing or threatened violation of federal law."); *Han v. U.S. Dep't of Justice*, 45 F.3d 333, 338 (9th Cir. 1995) (holding the Eleventh Amendment bars suits where "[t]here is no allegation that the state defendants are likely to approve third party agreements in the future or that plaintiffs otherwise face a threat of harm from the state defendants' future actions").

Plaintiff fails to allege an ongoing violation or threat of future enforcement of federal law that would entitle him to injunctive relief. Plaintiff requests that he not be transferred back to Five Points, alleging that if he is, Defendants will retaliate against him by assaulting him and tampering with his mail and food. (Dkt. 12 at 45). Such statements merely speculate as to possible future conduct by Defendants; Plaintiff does not allege that Defendants are currently engaging in unconstitutional behavior or that a policy could be enforced against Plaintiff in violation of his constitutional rights. *See Lee v. O'Harer*, No. 9:13-CV-1022, 2014 WL 7343997, at *11 (N.D.N.Y. Dec. 23, 2014) (dismissing the plaintiff's request for injunctive relief because "[e]ven plaintiff's retaliation claim, if it were to proceed, does not allege anything other than speculative future conduct. There is no allegation of any ongoing policy that could be enjoined"); *see also Vega v. Semple*, No. 3:17-CV-107 (JBA), 2018 WL 4656236, at *12 (D. Conn. Sept. 27, 2018) (allowing a

claim for prospective injunctive relief to go forward because the plaintiffs' allegations "are not merely speculative" and state a continuous violation of law), *appeal filed*, No. 18-3176 (2d Cir. Oct. 24, 2018).[5]

The Court therefore finds Plaintiff's request for injunctive relief is insufficient to avoid the protections extended to state actors by the Eleventh Amendment, as are his claims against Defendants in their official capacities, and they are accordingly dismissed.

## C. **Equal Protection Claim**

Plaintiff alleges that Nurse Springer violated his equal protection rights. (Dkt. 12 at ¶ 83). For the reasons that follow, the Court finds the Amended Complaint fails to state an equal protection claim.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quotation omitted). "'Unless a classification trammels fundamental personal rights or is drawn upon inherent suspect distinctions such as race, religion, or alienage,' the courts must presume that the distinctions made are constitutional as long as

---

[5]     Although this argument was not raised by Defendants, another potential problem with Plaintiff's request for injunctive relief is that any Defendants named in the instant lawsuit do not appear to have the authority to decide where Plaintiff is housed, and therefore it is not certain that Plaintiff's injury could be redressed if he is granted the injunctive relief he seeks. *See* NY Correction Law § 72.2 ("The commissioner, or the superintendent or director of an institution in which an inmate is confined, may permit an inmate to be taken, under guard, to any place or for any purpose authorized by law[.]").

they are 'rationally related to a legitimate state interest.'" *Robles v. Dennison*, 745 F. Supp. 2d 244, 301 (W.D.N.Y. 2010) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976), *aff'd*, 449 F. App'x 51 (2d Cir. 2011).

However, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'" *Id.* "To state an equal protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege . . . that he was treated differently from other similarly situated individuals." *Lanning v. City of Glen Falls*, 908 F.3d 19, 29 (2d Cir. 2018). "He also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Plaintiff has failed to allege either that he was a member of a protected class or that he was treated differently from other similarly situated individuals. *See, e.g., Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (holding the prisoner's equal protection claim was properly dismissed because he "has not established that he is a member of a protected class, nor has he established an equal protection violation under a 'class of one' theory"); *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. 2016) (dismissing the prisoner's equal protection claim because he did not allege that he was a member of a protected class or that he was treated differently from a similarly situated inmate). Plaintiff alleges that Nurse Springer "neglecting to report my sexual assault complaint was an act

of discrimination in violation of my equal protection [rights] under the United States Constitution." (Dkt. 12 at ¶ 83). Plaintiff's conclusory statements are not sufficient to state an equal protection claim. *See A'Gard v. Perez*, 919 F. Supp. 2d 394, 406 (S.D.N.Y. 2013) (holding the plaintiff failed to state a claim for denial of equal protection "because the Amended Complaint states no facts demonstrating that the plaintiff was treated differently from similarly situated inmates"); *Marrero v. Kirkpatrick*, 659 F. Supp. 2d 422, 424-25 (W.D.N.Y. 2009) (dismissing the prisoner's equal protection claim because he made the allegation "in conclusory fashion"). Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

### D. New York Penal Law Claims

Plaintiff alleges that Defendants violated New York Penal Law §§ 130.20(1), 130.25(1), 130.55, and 130.60. The Court dismisses these claims for the reasons that follow.

Under New York law, "[i]n the absence of an express private right of action, plaintiffs can seek civil relief in a plenary action based on a violation of the statute only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (2013) (quotation omitted). Determining whether a private right of action exists depends on three factors: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (1989). Defendants do

not contest the first two factors, but rather whether a private right of action for these New York Penal Law sections would be consistent with the legislative scheme. (Dkt. 22-1 at 9-10); *see Sheehy*, 73 N.Y.2d at 634 ("[W]e must, most importantly, determine the consistency of [finding a private right] with the purposes underlying the legislative scheme." (internal alteration, quotation, and emphasis omitted)).

Plaintiff does not have a private right to bring claims pursuant to New York Penal Law §§ 130.20(1), 130.25(1), 130.55, and 130.60. New York courts decline "to recognize a private right of action in instances where the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself ." *Cruz*, 22 N.Y.3d at 71. Courts within this Circuit have accordingly held consistently that criminal charges under New York law "cannot be prosecuted by a private person." *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009); *see, e.g.*, *Ong v. Park Manor (Middletown Park) Rehab. And Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (discussing that a provision of N.Y. Penal Law "cannot form the basis of a civil claim, nor can it form the basis of a § 1983 or related claim given that those statutes apply only to violations of federal constitutional rights"); *Peterec v. Hilliard*, No. 12-CV-3944 (CS), 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) ("[P]rivate citizens do not have a private cause of action for criminal violations." (quotation omitted)); *Smith v. N.Y.C. Police Dep't*, No. 06 Civ. 15436(JSR)(KNF), 2010 WL 423039, at *5 (S.D.N.Y. Feb. 4, 2010) ("[A]n individual cannot bring a private cause of action for alleged criminal violations."), *report and recommendation adopted*, 2010 WL 2008839 (S.D.N.Y. May 17, 2010); *Moore v. N.Y.C. Dep't of Educ.*, No. 03 Civ.2034(LAP), 2004 WL 691523, at *5 (S.D.N.Y. Mar.

31, 2004) ("These claims [pursuant to N.Y. Penal Law] must be dismissed because plaintiff has set forth no authority to support his claim that a private right of action to enforce rights allegedly created by these provisions exists.").

Moreover, the New York state legislature provided a civil cause of action for victims who have suffered from the acts defined under various sections of New York Penal Law Article 130. *See* Civil Practice Law and Rules ("CPLR") § 213-c ("[A] civil claim or cause of action to recover from a defendant . . . for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years."). The legislature's designation of express provisions of Article 130 of New York Penal Law that may be pursued in a civil action indicates that the legislature did not intend for there to be a private right to pursue the remaining provisions, including those invoked by Plaintiff. *See Sheehy*, 73 N.Y.2d at 636 ("Where the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy . . . at least where . . . the two statutes address the same wrong."); *see also People ex rel. Spitzer v. Grasso*, 42 A.D.3d 126, 135, 836 N.Y.S.2d 40 (1st Dep't 2007) (applying *expressio unius* to disallow the state Attorney General from bringing causes of action against corporate officers "other than the [five] causes of action the Legislature

- 17 -

expressly authorized" in the statute). Additionally, the phrasing of the statute indicates that the New York Legislature only intended for the victims of defendants convicted of, or at least charged with, those crimes to be able to pursue civil claims under the statute's purview. *See* CPLR § 213-c ("[A] civil claim or cause of action to recover from a defendant . . . for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant[.]").

Moreover, the state civil statutes that specifically reference the provisions invoked by Plaintiff either discuss legal consequences that stem from a conviction under those sections of the New York Penal Law or use them to articulate term definitions. *See, e.g.,* Dom. Rel. §§ 170, 200 (citing behaviors defined in N.Y. Penal § 130.20 as a cause for filing an action for separation or divorce); Veh. & Traff. § 509-cc (listing N.Y. Penal §§ 130.20, 130.25, and 130.55 as offenses that disqualify a person from being a school bus driver); Alco. Bev. Cont. § 53.1 (stating a conviction under N.Y. Penal §§ 130.55 or 130.60 may cause revocation of a license or permit issued pursuant to the Alcohol Beverage Control Law). Not one of these statutes indicates that the legislature intended for there to be a private right of action pursuant to New York Penal Law §§ 130.20(1), 130.25(1), 130.55, or 130.60.

The Court accordingly finds that a private right of action for Plaintiff's New York Penal Law claims would not be consistent with New York's legislative scheme, and grants Defendants' motion to dismiss them.

## E.    Retaliation Claim

Plaintiff alleges that Nurse Springer violated his First Amendment rights after he told her that Sergeant Patterson, Kampnich, Piotrowski, and Palmer had assaulted him on November 23, 2013. (Dkt. 12 at ¶ 83). He claims she retaliated against his verbal report by ignoring his medical concerns related to the incident. (*Id.*). The Court grants Defendants' motion as to this claim for the following reasons.

To make out a § 1983 retaliation claim, an inmate must show the following: (1) he was engaged in constitutionally protected conduct; and (2) the prison officials conduct was taken in retaliation for the inmate's protected conduct. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A prisoner's claims of retaliation are examined with "skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "Prisoner plaintiffs may rely on circumstantial evidence to prove their retaliation claims, such as temporal proximity of events, but in doing so, the plaintiff also must usually provide some non-conclusory evidence that raises an inference of retaliatory animus in order to proceed to trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 331 (D. Conn. 2015) (quotation omitted).

"While courts in this Circuit have found that verbal complaints may be protected for the purposes of a First Amendment retaliation claim, the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018). *Compare McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) ("[T]here is authority in the Second Circuit for the proposition that verbal complaints can be protected action for purposes of a First

Amendment retaliation claim."), *with Allah-Kasiem v. Sidorowicz*, No. 09 Civ. 9665(DLC), 2012 WL 2912930, at *9 (S.D.N.Y. July 17, 2012) ("Having chosen not to use the grievance process provided by [DOCCS], [the plaintiff] cannot claim that his comments to [the defendant] are entitled to the same protection that adheres to properly filed grievances."). Additionally, the vast majority of cases that address whether a prisoner's verbal complaints may constitute protected speech do so in the context of prisoners complaining to corrections officers—the Court's research found only one case in this Circuit where instead a law librarian was implicated, *see White v. Westchester County*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *1, *16 (S.D.N.Y. Dec. 21, 2018) ("Plaintiff has plausibly alleged that he was engaging in protected speech both when he approached [the defendant] to notarize his notice of claim against [the other defendants] and when he confronted [the defendant] about her harassment of him."), and none involving complaints made to medical staff. [6]

"Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every

---

[6]     Liberally construing Plaintiff's allegations, as is required when a plaintiff proceeds *pro se*, Plaintiff could claim that Nurse Springer retaliated against him for telling Sergeant Brinkeroff that he needed to report a sexual assault. (Dkt. 12 at ¶ 38). However, the Court finds that even if that were Plaintiff's claim, Nurse Springer would still be entitled to qualified immunity for the reasons discussed below.

'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

Nurse Springer is entitled to qualified immunity as to Plaintiff's retaliation claim. Assuming the truth of Plaintiff's claims, Nurse Springer's alleged conduct occurred on November 23, 2013, and the law surrounding whether a prisoner's verbal complaints are protected speech was unsettled then, and is still unsettled as of the issuance of this Decision. *See Booker*, 2018 WL 1614346, at *17 (holding the defendants were entitled to qualified immunity at the pleadings stage as to the First Amendment retaliation claim "[b]ecause the law is not well-settled regarding whether an inmate's verbal complaint constitutes protected speech"); *Ford v. Martuscello*, No. 9:14-cv-01566 (DNH/DEP), 2016 WL 5322166, at *4 (N.D.N.Y. June 23, 2016) ("[T]he Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate[.]"), *report and recommendation adopted*, 2016 WL 5256901 (N.D.N.Y. Sept. 22, 2016); *see also Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995) (granting qualified immunity where an officer allegedly retaliated against a prisoner for verbally defending another inmate because there was "no clearly established First Amendment right to approach and speak to" the officer).

Accordingly, the Court grants Defendants' motion as to Plaintiff's retaliation claim.[7]

### F.    Conspiracy to Cover-Up Claim

Plaintiff alleges Defendants conspired to file a false a misbehavior report against him to cover up their unlawful use of force. The Court dismisses Plaintiff's conspiracy claim for the reasons that follow.

To state a conspiracy claim in violation of constitutional rights under § 1983, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

The intracorporate conspiracy doctrine provides that "if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy." *O'Diah v. Neth*, No. 6:10-CV-6592(MAT), 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013) (quotation and citation omitted) (alterations in original). "[A]n exception to the doctrine applies when individual employees are pursuing

---

[7]    In its April 14, 2017, Order, the Court noted that while filing a grievance is a constitutionally protected activity for retaliation purposes, Plaintiff did "not allege that his filing of the grievance was the substantial or motivating factor behind the Misbehavior report." (Dkt. 11 at 11-12). The Court afforded Plaintiff leave to file an amended complaint to cure this defect (*id.* at 12), but Plaintiff's Amended Complaint failed to do so (Dkt. 12 at 23-31). Accordingly, the Court dismissed Plaintiff's false misbehavior report claims in its April 18, 2018, Order. (Dkt. 18 at 3).

personal interests wholly separate and apart from the entity[.]" *Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006).

"While exact specifics are not required, 'the pleadings must present facts tending to show agreement and concerted action.'" *Graham v. Peters*, No. 13-CV-705JTC, 2013 WL 5924727, at *2 (W.D.N.Y. Oct. 31, 2013) (quoting *Anilao v. Spota*, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011)). Plaintiff is required to "'make an effort to provide some details of time and place and the alleged effects of the conspiracy.' In addition, a plaintiff must plead facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Plaintiff has failed to allege that Defendants acted to inflict an unconstitutional injury on him. The Amended Complaint alleges that Defendants conspired to file a false misbehavior and medical report against Plaintiff regarding the events of November 23, 2013, to cover up their unlawful use of force on Plaintiff. (Dkt. 12 at ¶¶ 62-63). "[T]here is no constitutional right to be free from the cover-up of a past constitutional violation." *Lewis v. Havernack*, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *12 (N.D.N.Y. Mar. 28, 2013), *report and recommendation adopted*, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013); *see James v. Annucci*, No. 9:17-CV-0843 (GTS/DEP), 2018 WL 4565771, at *4 (N.D.N.Y. Sept. 24, 2018) ("General allegations that a party conspired to cover up a past constitutional violation are insufficient to establish liability under Section 1983."); *De Ponceau v. Bruner*, No. 9:09-CV-0605 (GTS/DEP), 2012 WL 1030415, at *7 (N.D.N.Y. Feb. 21, 2012) ("A claim that a prison employee has taken steps to conceal evidence of a

past constitutional violation which is not ongoing does not alone state a cognizable constitutional claim under 42 U.S.C. § 1983."), *report and recommendation adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012). Rather, Plaintiff must allege that the conspiracy itself inflicted some sort of unconstitutional injury, such as a deprivation of due process rights. *See Barrett v. United States*, 798 F.2d 565, 578 (2d Cir. 1986) (finding the existence of a constitutional deprivation when a cover-up resulted in a lower settlement figure).

The Court previously addressed how Defendants' alleged conduct impacted Plaintiff's due process rights in its April 14, 2018, and April 18, 2018, Orders in the context of Plaintiff's false misbehavior report claim. (Dkt. 11 at 11-12; Dkt. 18 at 2-3). "In general, a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (quotation omitted). There are two exceptions to this rule: "when an inmate is able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Id.* (quotation omitted). The Court found Plaintiff has not alleged that he was disciplined because of the conspiracy or allegedly false misbehavior report (Dkt. 18 at 3)—in fact, he alleges that the charges brought against him were dismissed after a disciplinary hearing or are still pending (Dkt. 12 at ¶¶ 67, 74). As Plaintiff alleges that he was not disciplined, he has failed to allege, nor could he allege, that any agreement between Defendants resulted in a deprivation of his due process rights. *See McCloud v. Prack*, 55 F. Supp. 3d 478, 483 (W.D.N.Y. 2014)

(holding the plaintiff's allegations could not establish a constitutional deprivation because "the misbehavior reports issued against plaintiff, arising out of the incidents in question, were dismissed").

Plaintiff also alleges that Nurse Springer falsified her medical report as part of the cover-up. (Dkt. 12 at ¶ 62 ("Defendant Joann L. Springer, misrepresented the altercation of Nov. 23, 2013 by falsifying the medical report, which she wrote in conspiracy with [the other defendants], that Plaintiff (me) had no [visible] injuries[.]")). A guard or nurse's failure to document an inmate's injuries is not a constitutional deprivation, and bare allegations that a medical report was used to cover up a conspiracy are not sufficient to state a conspiracy claim pursuant to § 1983. *See Tavares v. N.Y.C. Heath and Hosps. Corp.*, No. 13-cv-3148 (PKC)(MHD), 2015 WL 158863, at *9 (S.D.N.Y. Jan. 13, 2015) (holding the plaintiff's allegations that medical staff tried to cover-up for the defendants in their medical report was not sufficient to state a conspiracy claim); *Evans v. Murphy*, No. 12CV365, 2013 WL 2250709, at *3 (W.D.N.Y. May 22, 2013) ("[T]he plaintiff asserts that [a prison official] failed to document [the plaintiff's] injuries to cover-up the incident. Such a claim does not state a constitutional claim.").[8]

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's conspiracy claim.

---

[8]     Additionally, as discussed above, to the extent that Plaintiff alleges Nurse Springer engaged in retaliatory conduct by issuing a false medical report in response to his verbal complaint, she is entitled to qualified immunity. Moreover, Plaintiff has not alleged facts demonstrating "that [D]efendants entered into an agreement, express or tacit," to retaliate against him—his conspiracy claim instead centers around Defendants' alleged cover-up. *Warren*, 33 F. Supp. 2d at 177; *see supra* note 7.

## CONCLUSION

For the forgoing reasons, Plaintiff's motion for a preliminary injunction (Dkt. 21) is denied, and Defendants' partial motion to dismiss (Dkt. 22) is granted.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 20, 2019
       Rochester, New York